THE VICTORIA.

(District Court, S. D. New York. May 10, 1898.)

Tug and Tow—Duty to Land Tow Carefully—Proof of Violence.

A loaded canal boat was landed by the V. at night at the end of Rockland Pier. Soon afterwards she leaked so that she had to be beached. The crash of the landing was heard. The blow threw dishes from the cabin cupboard, and two planks were found cracked and a third sprung off at one end of the canal boat. Held, sufficient evidence of a violent landing to make the tug liable for loss of the cargo.

This was a libel in rem by Horatio G. Craig & Co. against the steamtug Victoria, to recover damages resulting from alleged negligent towage.

James J. Macklin, for libelants.

Amos Van Etten, for claimant.

BROWN, District Judge. There is no doubt that tugs in undertaking the towage of canal boats as well as of any other craft, are entitled to assume, in the absence of notice to the contrary, that the boats are in reasonably sound condition and able to receive without damage all the usual and ordinary contacts of navigation, whether in making up or shifting the tow, or in landing the boats at the piers. But this rule in no way justifies any rude, rough or indif-

ferent handling of boats, nor absolves the tug from the duty of navigating with reasonable care, so as to avoid contracts that may become injurious. In every case the question of liability for damage must be determined from all the circumstances in evidence, depending on whether the blow was one of unnecessary violence, and therefore indicative of lack of reasonable care, under the circumstances of the case.

The Victoria in this case took the libelants' canal boat from the tow in mid river, a little above Rockland Lake, for the purpose of landing her at the end of the dock at that point, whence she might afterwards proceed across the river to Tarrytown. There was nothing in the circumstances of the wind or weather, the wind being from the westward, to make the landing at the Rockland Lake Dock at this time difficult, or in any wise different from ordinary landings at night. The tug came down nearly in line with the dock, on the last of the flood tide, and the starboard bow of the canal boat struck the spring piles at the upper corner of the dock. In a few moments afterwards she was found to be leaking so badly that she had to be beached in the basin. Subsequent examination showed that two planks in her starboard bow at about the light water line were cracked, and that another plank lower down and running from the stem obliquely downwards and partly beneath the bottom, was sprung off at the lower end, so as to admit water freely. A disinterested witness inside the basin and asleep upon his boat, was awakened by the crash; and the blow was sufficient to burst open the door of the cupboard in the cabin of the canal boat and throw the dishes out upon the floor. This is certainly not an ordinary mode of landing. The circumstances seem to me to indicate very clearly a too rapid approach to the pier, and a landing altogether unjustifiable where there are no special circumstances of difficulty from wind, waves or weather.

There is some difference in the testimony concerning the proper respiking of the planks of this boat that ran underneath the water line. There is some evidence supporting the captain's testimony that the boat had been respiked since she was built in 1891; but there is no distinct evidence that more than one new spike was placed in the plank that started off. This new spike however was in the end that started off, and all the spikes both new and old in that part of the plank, were broken by the blow.

It is unnecessary to make any finding as regards the perfect sufficiency of the spiking of the plank in question, since the canal boat is not a party to this action. I cannot avoid finding upon the evidence that the contact was one of unnecessary violence, and without reasonable excuse; and that the tug is, therefore, answerable for the damage resulting to the cargo.

Decree accordingly.